IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VILLAGE OF TINLEY PARK, ILLINOIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2017 CV 3271 |
| | ) | |
| AMY CONNOLLY, | ) | Honorable Judge Elaine E. Bucklo |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**(ABSOLUTE LEGISLATIVE IMMUNITY)**

**I.     INTRODUCTION**

This extraordinary lawsuit asks the following question:  Is a municipal employee answerable in damages to her employer for consequences of a law which was ultimately adopted by the corporate authorities of that employer?  For the reasons set forth below, this Court need not answer this question because Defendant is entitled to dismissal of this lawsuit based on her absolute legislative immunity under Illinois law.

**II.     SUMMARY OF COMPLAINT'S ALLEGATIONS**

As set forth in the complaint, Defendant Connolly was the Village's Director of Planning, responsible for "technical work in planning and directing all operations of the planning areas." ¶ 6. In 2009-11, the Village adopted an Ordinance called the Legacy Code.  ¶ 7.  One of the purposes of the Legacy Code was to foster downtown Tinley Park business "by including a requirement that all new real estate developments along those corridors contain street level commercial space," which the complaint refers to as the "Street Level Commercial Requirement."

¶ 8. Paragraphs 9-11 allege that Defendant was desperate to bring residential development into the area; that desperation led her to make "numerous intentional misrepresentations to the Village Trustees and employees and third parties, including misrepresentations with regard to a development called The Reserve." ¶ 11. Paragraphs 12-18 allege that a developer called Buckeye wanted to build a residential project, but its plans did not "comply with the Street Level Commercial Requirement." ¶ 15.

Connolly was aware of this and according to paragraph 18, breached her fiduciary duties to the Village by orchestrating the Village to amend its Legacy Code by inducing the Village Board to adopt "text amendments" which changed the "Street Level Commercial Requirement" in the Legacy Code to a "Street Level Commercial *Permitted* Obligation." ¶ 18 C. Paragraph 18 goes on to allege that Defendant pulled the wool over the eyes of the Trustees by somehow concealing the impact of the Street Level Commercial Permitted amendment.

Paragraphs 19-22 allege that as a result of the text amendments, the Village was sued by both Buckeye and the United States, both suits claiming unlawful discrimination by the Village under the Fair Housing Act. ¶ 22.[1] The Village alleges that had Connolly "not schemed to change the Legacy Code without the Village's knowledge, the Village would not have been sued by Buckeye or the United States."

The remainder of the complaint alleges that Connolly's actions in scheming "to change the Legacy Code," violated her fiduciary duties, as "this disloyal employee caused the Village to be damaged in the amount of Connolly's salary" and "the amount it was forced to expend to defend

---

[1] *Buckeye Community Hope Foundation, et al. v. Village of Tinley Park*, 16 CV 04430, and *United States v. Tinley Park*, 16 CV 10848. Tinley Park settled the Buckeye litigation by paying $2,450,000.00. The lawsuit filed by the United States is still pending and Connolly is seeking to have this case assigned to Judge Ellis in connection with that litigation.

2

against and then settle a federal lawsuit filed by Buckeye against the Village and defend against a lawsuit filed against it by the United States." ¶¶ 37-38.

With that background, we now turn to the public record. The public record demonstrates, consistent with the complaint, that Defendant was intimately involved in the preparation of the Ordinance which the Village now claims caused all of the problems. Exhibit 1 is the minutes of the August 6, 2015 Tinley Park Plan Commission meeting. Pages 14-15 are the discussion of the proposed amendment to the Legacy Code, including changing "Street Level Commercial Required" to "Street Level Commercial Allowed." Defendant presented these items to the Commission. Exhibit 1, pgs. 14-15.

Exhibit 2 is the minutes of the Village Board Planning and Zoning Committee meeting of September 1, 2015. Trustee Vandenberg chaired the meeting and once again, Connolly "presented an overview of the proposed enhancements to the Tinley Park Legacy Code," including her highlighting "a proposed text amendment to modify commercial street requirements from required to permitted along the Legacy corridor." Exhibit 3 is the minutes from the Village Board September 15, 2015 Village Board meeting. Once again, the required-permitted amendment was highlighted. Exhibit 3 at 5. The Village attorney "has reviewed the proposed text amendments and finds them to be acceptable."

The proposed Ordinance was on the October 6, 2015 voting agenda. Exhibit 4. Exhibit 5 is Defendant's "Plan Commission Staff Report" of the proposed amendments, once again highlighting the required-permitted amendment. See Ex. 5 at 3 of 7.

As set forth on Exhibit 6, the Village Board approved Ordinance No. 2015-O-045. After making a number of findings in support of the Ordinance, Section 3 specifically approves of the relaxation of the Street Level Commercial Requirement.

3

It is accordingly undisputed that the Village is complaining about the consequences of a legislative act – an ordinance – adopted by the Village with Connolly being the principal staff person who put the Ordinance together and moved it forward.

### III. CONNOLLY IS ENTITLED TO LEGISLATIVE IMMUNITY FOR ANY ACTIONS TAKEN IN CONNECTION WITH THE ADOPTION OF ORDINANCE NO. 2015-O-045.

Illinois recognizes the common law doctrine of legislative immunity. *Mahoney Grease Service, Inc. v. City of Joliet*, 85 Ill.App.3d 578, 581, 40 Ill. Dec. 708 (3rd Dist. 1980) ("It is a well-settled rule that members of a municipal council are not liable personally for their legislative acts"). The common law rule adopted in Illinois has been incorporated by the U.S. Supreme Court into Section 1983 litigation. *Bogan v. Scott-Harris*, 523 U.S. 44, 118 S. Ct. 966 (1998), recognizing that "the common law accorded local legislators is the same absolute immunity it accorded legislators at other levels of government [and that] the rationales for such immunity are fully applicable to local legislators." Under the Supreme Court's functional approach, the acts of individuals who did not actually vote on legislation, but who were involved in the legislative process, are also entitled to absolute immunity. 118 S. Ct. at 973. Accordingly, while this case is brought under Illinois common law, analogous federal cases are instructive as guidance to this Court.

Enactment of an ordinance is a legislative act. *Hawthorne v. Village of Olympia Fields*, 204 Ill.2d 243, 253, 274 Ill. Dec. 59 (2003) ("The enactment of an ordinance is a legislative act"); *Lapp v. Village of Winnetka*, 354 Ill.App.3d 152, 169, 295 Ill. Dec. 777 (1st Dist. 2005) (same).

Numerous cases have found that not simply legislators, but other public officers and employees like Connolly, are entitled to legislative immunity as long as they are involved in the legislative process. *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808-9 (7th Cir. 2003)

(Legislative immunity protects County executive involved in transmitting budget); *Bryant v. Jones*, 575 F.3d 1281, 1305-07 (11th Cir. 1999); *Weiler v. Village of Oak Lawn*, 86 F.Supp.3d 874, 881-882 (N.D. Ill. 2015) (Collecting cases, upholding absolute legislative immunity for Village Manager who proposed an ordinance eliminating a 1-person department).

If a third party brought a lawsuit against Connolly for her role in the passage of a zoning ordinance, she would be entitled to absolute legislative immunity under the common law. This is an unusual case, because Connolly is being sued not by a third party, but by her former municipal employer. However, the unusual twist which is this case should not divest Connolly of her immunity.

Absolute legislative immunity protects those involved in the legislative process from "deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence, but for the public good." *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951). The public good is undermined by any restriction placed on the discretion being exercised by those in the legislative process, including the restriction which would rise from the fear of personal liability. *Bogan*, 523 U.S. at 52-53.

Because the immunity is absolute, the form of the action does not matter. *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 100 S. Ct. 1967 (1980) (upholding absolute legislative immunity in a suit for declaratory and injunctive relief). Because the immunity is absolute, it cannot be breached by allegations of misconduct or improper motive. *Tenney*, 341 U.S. at 376-77 ("The claim of an unworthy purpose does not destroy the privilege"); *Bogan*, 523 U.S. at 55 ("Whether an act is legislative turns on the nature of the act rather than on the motive or intent of the official performing it"); *Weiler*, 86 F.Supp.3d at 882 ("Even if Weiler's

5

allegations suggest an improper motive, the Court cannot examine [the Village Manager's] motives").

These principles of immunity should be applied to bar this claim against Connolly. The essence of this lawsuit is that Connolly pushed through the required-to-permitted amendment because (a) the amendment would facilitate the development of The Reserve, and (b) the development of The Reserve would help her fulfill her employer's directive that she bring more development to Tinley Park. Now that things have backfired (at least in the eyes of certain Tinley Park elected officials), they want to blame Connolly for the consequences of what a reasonable person would conclude was a race-based legislative decision to block a multi-family residential development which might result in low-income African-Americans living near the good citizens of Tinley Park.

Public employees like Connolly should not be subject to any sort of liability for their role in preparing and recommending a legislative act like this. This case is made for the application of the doctrine of absolute legislative immunity.

Accordingly, the complaint herein should be dismissed.

        Respectfully submitted,

        AMY CONNOLLY, Defendant

        By:    /s/ John B. Murphey
                John B. Murphey, Her Attorney

John B. Murphey
Rosenthal, Murphey, Coblentz & Donahue
30 N. LaSalle Street, Suite 1624
Chicago, Illinois 60602
Tel: 312-541-1070/Fax: 312-541-9191
jmurphey@rmcj.com

**CERTIFICATE OF SERVICE**

   I hereby certify that on June 20, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of said filing to all parties listed below:

Alastar S. McGrath
Jerome R. Weitzel
Jessica F. Garro
David B. Montgomery
Larry J. Lipka
Kozacy, Weitzel, McGrath P.C.
55 W. Monroe Street, Suite 2400
Chicago, Illinois 60603
Tel: 312-696-0900/Fax: 312-696-0905
amcgrath@kwmlawyers.com
jweitzel@kwmlawyers.com
jgarro@kwmlawyers.com
DMontgomery@kwmlawyers.com
llipka@kwmlawyers.com

          /s/ John B. Murphey
          ROSENTHAL, MURPHEY, COBLENTZ & DONAHUE
          30 North La Salle Street, Suite 1624
          Chicago, Illinois 60602
          Tel. (312) 541-1070/Fax (312) 541-9191
          jmurphey@rmcj.com