UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VILLAGE OF TINLEY PARK, ILLINOIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 3271 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| AMY CONNOLLY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Following a series of events that resulted in the Village of Tinley Park (the "Village") facing Fair Housing lawsuits from housing developer Buckeye Community Hope Foundation and Buckeye Community Sixty Nine LP (jointly, "Buckeye") and the United States, the Village brought this lawsuit against its former employee Amy Connolly alleging Connolly breached her fiduciary duties to the Village when she pushed a change to the Village's zoning plan through the Village Board. Connolly now moves to dismiss [11] the complaint arguing that she is immune to liability under the Illinois common-law doctrine of legislative immunity. Because Illinois courts have not previously applied the common law doctrine of legislative immunity to non-legislators and Connolly has not shown that it should be extended to reach such persons, the Court denies the motion to dismiss.

## BACKGROUND[1]

Connolly, now a Wisconsin resident, was the Director of Planning for the Village from September 2007 until she resigned the position in May 2016 to take a position as the Development Director for the City of Racine, Wisconsin.

---

[1] The facts in the background section are taken from the complaint and are presumed true for the purpose of resolving the Rule 12(b)(6) challenges. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

In 2009, the Village developed and approved the "Legacy Plan," which was meant to be a master plan for the future development of the Village's downtown into a walkable area with commercial real estate corridors. The plan included a requirement that all new real estate developments along these corridors include street-level commercial space ("Commercial Requirement"). While Connolly was Director of Planning, the zones covered by the Legacy Plan experienced minimal development. The Village alleges that Connolly became desperate to show that she could bring in development and decided to do whatever was necessary to do so.

In March 2015, Buckeye contacted the Village regarding a potential development, called The Reserve, at the corner of 183rd Street and Oak Park Avenue in the Village. The proposed area for The Reserve was covered by the Legacy Plan and the Commercial Requirement. The proposal for The Reserve did not include any street level commercial space, and Connolly was aware that this was the case. However, Connolly represented to the Village that The Reserve met all Village zoning requirements.

At the August 6, 2015 Village Plan Commission meeting, Connolly prepared a motion to review and consider amending the Legacy Plan in several parts, including a recommendation to amend the Commercial Requirement to state that street level commercial space is "permitted" rather than "required" in the area covered by the Legacy Plan. On October 6, 2015, the Village Board approved the proposed amendments to the Legacy Plan, but the Board did not discuss the changes to the Commercial Requirement specifically.

Subsequent to the change to the Commercial Requirement, the Plan Commission tabled the zoning application for The Reserve. As a result, Buckeye filed a lawsuit against the Village alleging discrimination under the Fair Housing Act. The United States then also filed a lawsuit alleging violations of the Fair Housing Act arising from the tabling of The Reserve proposal.

The Village alleges that these lawsuits would not have occurred if Connolly had not "schemed to change the Legacy Code without the Village's knowledge." Doc. 1 ¶ 23.

On March 22, 2016, citizens of the Village sued the Village seeking to rescind the amendments to the Legacy Plan adopted at the October 2015 meeting. On May 6, 2016, Connolly resigned her position with the Village. On May 17, 2016, the Village rescinded the amendments.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Connolly moves to dismiss the Village's complaint, arguing that her actions in relation to changing the Commercial Requirement from mandatory to permissive are shielded from liability by Illinois' common-law legislative immunity doctrine. The Village argues that the scope of the legislative immunity defense under Illinois law is not governed by common law, but by Section 2-205 of the Illinois Local Government and Governmental Employees Tort Immunity Act ("ITIA"), 745 Ill. Comp. Stat. 10/1-101 *et seq.*, and that the ITIA does not provide immunity for breaches of fiduciary duties. Connolly counters that the ITIA only applies to tort suits, and breach of fiduciary duty claims are not tort claims under Illinois law. Furthermore, Connolly asserts that the ITIA did not rescind the common-law immunities for non-tort actions.[2]

The ITIA only provides immunity from suit for claims against government employees arising from torts. *Kinzer on Behalf of City of Chicago v. City of Chicago*, 539 N.E.2d 1216, 1220, 128 Ill. 2d 437, 132 Ill. Dec. 410 (1989). Because the Village's claim against Connolly is for breach of fiduciary duty, and such a breach is not a tort under Illinois law, the ITIA does not control and her immunity is determined by Illinois common law. *Id.* at 1220 (the extent to which claims for breach of fiduciary duties are barred by an immunity is governed by Illinois common law). However, no Illinois court has addressed whether common-law legislative immunity can apply to non-legislators, and where state law is unsettled "we must attempt to predict how we believe that [the highest state court] would decide." *Abstract & Title Guar. Co. v. Chicago Ins. Co.*, 489 F.3d 808, 811 (7th Cir. 2007).

---

[2] The Village essentially concedes this point in its proposed Sur Reply, but because the Court did not grant the Village leave to file the Sur Reply, the Court gives the document no further consideration.

Under Illinois common law, "[i]t is well settled rule that members of a municipal council are not liable personally for their legislative acts." *Mahoney Grease Serv., Inc. v. City of Joliet*, 406 N.E.2d 911, 914, 85 Ill. App. 3d 578, 40 Ill. Dec. 708 (1980). And it is equally clear that enactment of an ordinance is a legislative act. *Hawthorne v. Vill. of Olympia Fields*, 790 N.E.2d 832, 839, 204 Ill. 2d 243, 274 Ill. Dec. 59 (2003). It is not clear, however, under Illinois law, whether legislative immunity extends to employees of a municipality who participate in the legislative process. *See Empress Casino Joliet Corp. v. Blagojevich*, 638 F.3d 519, 532 (7th Cir. 2011) ("It is not at all clear that if presented with a proper claim of common-law legislative immunity, the Illinois Supreme Court would limit the immunity to members of the legislature."), *opinion vacated in part on other grounds*, 649 F.3d 799 (7th Cir. 2011). It is so unclear, in fact, that one former judge in this Circuit suggested certifying a similar question to the Supreme Court of Illinois. *Id.* at 544 (Posner, J., dissenting) ("It is sufficiently uncertain whether Blagojevich is entitled to immunity to warrant certifying the question to the Supreme Court of Illinois.").

Illinois courts advise construing immunities narrowly to preserve liability except where it has been expressly limited. *Barnett v. Zion Park Dist.*, 665 N.E.2d 808, 821–22, 171 Ill. 2d 378, 216 Ill. Dec. 550 (1996) (McMorrow, J., dissenting). As no court has previously found the Illinois common-law legislative immunity applicable to non-legislative actors, this Court should not expand an otherwise narrow immunity, unless there is a compelling reason to do so. *See e.g.*, *Gulledge v. Gulledge*, 367 N.E.2d 429, 431, 51 Ill. App. 3d 972 (1977) (declining to extend parental immunity to cover grandparents where doing so would not further the purpose of the immunity).

In support of her argument that she is entitled to immunity, Connolly asks the Court to import federal common law on legislative immunity into Illinois state law. Under federal

common law, non-legislators are covered by legislative immunity when the actions under review are essentially legislative in nature. *See Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S. Ct. 1425, 18 L. Ed. 2d 577 (1967) (legislative immunity is "less absolute, although applicable, when applied to officers or employees of a legislative body, rather than to legislators themselves"). In *Empress Casino*, the Seventh Circuit noted several other states that have taken this approach because their own law on legislative immunity was under developed. *See Empress Casino*, 638 F.3d at 530–31 (citing Texas, New Jersey, and Ohio state court cases where the courts incorporated federal common law into their legislative immunity doctrine). However, Illinois appears to have generally taken a restrictive view of legislative immunity when presented with opportunities to extend it. In *Jorgensen v. Blagojevich*, 811 N.E.2d 652, 666, 211 Ill. 2d 286, 285 Ill. Dec. 165 (2004), the Illinois Supreme Court found that legislative immunity, as described in the Illinois Constitution and Illinois Code of Criminal Procedure, did not apply to the governor, even when the governor is acting in his essentially legislative capacity by exercising a "reduction veto" to cut pay for Illinois judges. *Id.* In so doing, the court noted with some disapproval, that the governor had relied almost exclusively on federal case law to support his legislative immunity theory. *Id.* This cuts against extending the immunity.

Finally, there is already an established immunity that touches upon non-legislative officials performing discretionary duties under Illinois common law: the public official immunity doctrine. *Kinzer*, 539 N.E.2d at 1220 ("The common law public official immunity doctrine provides that a public officer is immune from individual liability for the performance of discretionary duties in good faith." (citation omitted) (internal quotation marks omitted)). This separate immunity further counsels against extending legislative immunity to cover non-

legislators. There is no compelling reason to extend absolute legislative immunity to cover non-legislators when they are already covered by qualified public official immunity.[3]

Therefore, because the Illinois Supreme Court counsels narrow application of immunities generally, it has typically taken a narrow view of legislative immunity, and there is already an established common-law immunity covering public officials in Illinois, the Court declines to extend common-law legislative immunity to non-legislative actors, and denies Connolly's motion to dismiss.

**CONCLUSION**

For the foregoing reasons the Court denies the motion to dismiss [11]. Connolly is ordered to answer the complaint by December 22, 2017.

Dated: November 28, 2017

     _____
     SARA L. ELLIS
     United States District Judge

---

[3] Connolly did not raise public official immunity in her motion to dismiss and it likely involves factual questions not resolvable at this stage. Therefore, the Court does not address whether this immunity bars the claim.