UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VILLAGE OF TINLEY PARK, ILLINOIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMY CONNOLLY, )<br>)<br>Defendant. ) | No. 17 C 3271<br><br>Judge Sara L. Ellis |

## OPINION AND ORDER

Following a series of events that resulted in the Village of Tinley Park (the "Village") facing Fair Housing Lawsuits from housing developer Buckeye Community Hope Foundation and Buckeye Community Sixty Nine LP (jointly, "Buckeye") as well as the United States, the Village brought this lawsuit against its former employee Amy Connolly alleging Connolly breached her fiduciary duties to the Village when she pushed a change to the Village's zoning plan through the Village Board. Connolly is represented by John Murphey, whom the Village now moves to disqualify [27] from the case because he previously engaged in privileged and confidential conversations with the now-former Mayor and City Manager of the Village regarding the substance of the lawsuits against Buckeye (the "Buckeye Case") and the United States (the "DOJ Case"). The Court grants the Village's motion to disqualify Murphey because the Village reasonably believed Murphey was acting as its attorney when he provided advice to the now-former Mayor and City Manager regarding the Buckeye and DOJ Cases, and during that conversation he likely received confidential information relevant to the present case.

**BACKGROUND**

Murphey has a long career representing various municipalities in the Chicago suburbs. In 2015, the Village retained Murphey to represent it in a group of lawsuits, unrelated to the present case in any way. All of these cases were dismissed on May 17, 2017, and Murphey is no longer representing the Village in any capacity. However, in 2016, while he was serving as the Village's attorney on these matters, both Buckeye and the Department of Justice ("DOJ") sued the Village for alleged violations of federal fair housing laws. After DOJ filed its lawsuit against the Village, the Village Manager, David Neimeyer, contacted Murphey and set up a phone call for the purpose of discussing the DOJ Case. The call took place on December 9, 2016. In addition to Murphey and Neimeyer, the now-former Mayor of Tinley Park, David Seaman, was also on the call.

The call lasted approximately twenty minutes, during which time the participants discussed the DOJ case and Neimeyer and Seaman provided Murphey with details regarding the Reserve development, which is the subject of both the DOJ and Buckeye Cases. They also provided him with details regarding the DOJ Case. During the conversation, Murphey advised the Village regarding how the DOJ typically handles such cases and at the end of the conversation, recommended the parties settle the matter quickly. Immediately following the call, Murphey sent an email to Neimeyer and Seaman, attaching a sample consent decree with the DOJ, to give them an idea of what a settlement would look like.

In the weeks following the phone call, Murphey reached out to Neimeyer via email regarding the Buckeye Case and the DOJ Case. These emails were non-substantive in nature, simply inquiring whether the Village had engaged in settlement discussions with the DOJ and commenting on newspaper articles regarding the cases.

The Village filed the present suit on May 1, 2017. Because the allegations in this suit relate to Connolly's employment with Tinley Park, the Intergovernmental Risk Management Agency ("IRMA"), of which Tinley Park is a member, provides her defense. IRMA retained Murphey to represent Connolly on June 8, 2017 and he filed his appearance on June 13, 2017. Shortly after being retained, Murphey filed a motion to dismiss and a motion to reassign the case to this Court because it is substantially related to the DOJ case currently proceeding before this Court. The parties completed briefing on the motion to dismiss on August 23, 2017, and the Village did not raise any motion to disqualify until now.

The Village asserts that its attorneys did not become aware of Murphey's prior role in the DOJ Case until mid-September 2017, and two weeks after becoming aware, they contacted Murphey and asked him to withdraw from the case. Murphey refused this request, and on October 20, 2017, the Village filed the present motion seeking Murphey's disqualification.

## LEGAL STANDARD

A motion to disqualify counsel requires a two-step analysis where the Court (1) considers whether there is an ethical violation and then, if so, (2) determines whether disqualification is appropriate to remedy the violation. *alfaCTP Sys., Inc. v. Nierman*, No. 15-cv-9338, 2016 WL 687281, at *4 (N.D. Ill. Feb. 19, 2016). Disqualification of counsel is a "drastic measure" imposed only "when absolutely necessary." *Black Rush Mining, LLC v. Black Panther Mining*, 840 F. Supp. 2d 1085, 1089 (N.D. Ill. 2012) (quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983)). Because disqualification deprives a party of the representation of their choosing, disqualification motions—although sometimes legitimate and necessary—are "viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). "There must be solid

evidence to support an allegation of conflict." *Fematt v. Finnigan*, No. 11-cv-1530, 2012 WL 3308759, at *2 (N.D. Ill. Aug. 13, 2012). The moving party therefore bears a heavy burden of proving the facts required for disqualification. *alfaCTP Sys., Inc.*, 2016 WL 687281, at *4; *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997).

## ANALYSIS

### I. Disqualification

The Village argues that the Court should disqualify Murphey from representing Connolly because the Village previously shared privileged and confidential information about the DOJ case with Murphey while believing that Murphey was acting as its attorney, and that the DOJ case is substantially related to this case, such that it presents an unresolvable conflict for Murphey. Connolly argues that Murphey never established an attorney-client relationship with the Village with respect to the DOJ case, and that the Village did not disclose any confidential information to him during his discussions with them regarding that case.

ABA Model Rule of Professional Conduct 1.9 provides that a lawyer who "formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirm[ed] in writing." Model Rules of Prof'l Conduct r. 1.9(a). The Court first must determine whether there was an attorney-client relationship between the Village and Murphey. *See Fematt*, 2012 WL 3308759, at *3 & n.1 (finding no error in magistrate judge's decision to address attorney-client relationship issue before substantially related test); *Black Rush Mining*, LLC, 840 F. Supp. 2d at 1090 (analyzing attorney-client relationship first when determining whether client conflict existed). If an attorney-client relationship existed, then the Court must determine whether that former

relationship is substantially related to a current relationship. *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 255–56 (7th Cir. 1983).

### A. Attorney-Client Relationship

There is no dispute that Murphey was representing the Village in three unrelated matters at the time he discussed the DOJ case with the Village. However, the parties dispute whether Murphey had an attorney-client relationship with the Village regarding the DOJ case itself. Whether an attorney-client relationship exists is a question of law. *See Blue Waters Partners, Inc. v. Edwin D. Mason, Foley and Lardner*, 975 N.E.2d 284, 295, 363 Ill. Dec. 482 (Ill. App. Ct. 2012). The attorney-client relationship can be express or implied through formal or informal consent. *See Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1316–17, 1319–20 (7th Cir. 1978); *Black Rush Mining, LLC*, 840 F. Supp. 2d at 1090; *Mindy's Rest., Inc. v. Watters*, No. 08 C 5448, 2009 WL 500634, at *2 (N.D. Ill. Feb. 27, 2009). "An attorney-client relationship exists when the lay party submits confidential information to the law party with reasonable belief that the latter is acting as the former's attorney." *Fematt*, 2012 WL 3308759, at *2 (citation omitted). While an express attorney-client relationship is often accompanied by a formal contract or a payment of fees, a court can find an implied relationship after considering factors such as the nature of the work performed and the circumstances in which confidential information was exchanged. *See Black Rush Mining, LLC*, 840 F. Supp. 2d at 1090; *Mindy's Rest., Inc.*, 2009 WL 500634, at *2.

The first question is whether the Village submitted confidential information to Murphey. According the Niemeyer affidavit, during the December 9th call, Neimeyer relayed to Murphey details of the Buckeye development, the Reserve, and the DOJ lawsuit, and in response, Murphey recommended trying to settle the case quickly. Neimeyer states in his affidavit that he

does not recall the specific facts that he disclosed to Murphey, he only recalls the subject matter. At the end of the call, Murphey advised the Village regarding settlement. It is reasonable, on these facts, to infer that Neimeyer conveyed confidential information regarding the DOJ case to Murphey during this conversation. The call was twenty minutes long and ended with Murphey giving a concrete recommendation about a resolution of the case. It is unlikely that he would make such a recommendation based merely on generalities and media articles.

Next, the Court must determine whether or not it was reasonable for the Village to believe that Murphey was acting as its attorney during this conversation. Here, at the time the Village consulted with Murphey regarding the DOJ case, he was actively representing the Village in three other matters, albeit unrelated. Neimeyer was aware of Murphey's relevant expertise in dealing with DOJ lawsuits similar to the current one. Neimeyer contacted Murphey to draw upon this experience and to obtain his advice regarding what to expect from the DOJ during the litigation. Muphey provided advice regarding settlement to Neimeyer. Additionally, there was no other attorney for the Village present on the call. Under these circumstances, it is more than minimally reasonable for Neimeyer to have believed that Murphey was acting as the attorney for the Village.[1] The Court, therefore, finds that during the phone call to discuss the DOJ case, an attorney-client relationship existed between Murphey and the Village.

B. Substantially Related

Having determined that the phone call between Murphey and the Village occurred in the context of an attorney-client relationship, the Court now turns to whether the substance of that relationship is substantially related to the substance of Murphey's representation of Connolly in this case. The Seventh Circuit uses a three-part analysis to determine whether a prior

---

[1] If Murphey were not participating in this case, and Connolly or the DOJ sought to depose him regarding this conversation, the Court is certain Murphey would assert the attorney-client privilege, and the Court would not compel him to testify.

representation is substantially related to a current representation. First, the Court makes a factual reconstruction of the scope of the prior representation. *LaSalle Nat'l Bank*, 703 F.2d at 255. Second, the Court determines whether it is reasonable to infer that the confidential information allegedly exchanged in the prior representation actually would have been given. *Id.* at 255–56. And finally, the Court determines whether the information exchanged in the prior representation is relevant to the issues raised in the current litigation. *Id.* at 256. If, after evaluating the facts, the Court concludes that there is a substantial relationship between the representations, then a presumption arises that the attorney received relevant confidential information during the prior representation. *Id.* The attorney in question may then rebut the presumption on the facts of the case. *Schiessle*, 717 F.2d at 420.

Neimeyer states in his affidavit attached to the motion to disqualify that in the prior representation, Murphey provided legal advice regarding the DOJ case and the related Buckeye case and received factual information from the Village regarding the Reserve development. It is reasonable to infer from the allegations in the Neimeyer affidavit that Murphey received confidential information regarding these other matters during his conversation with Neimeyer. The Village is not required to point to specific information that it passed to Murphey that would be relevant to the present case; the Court can presume such information passed to Murphey when it appears likely under the circumstances. *City of Waukegan v. Martinovich*, No. 03 C 3984, 2005 WL 3465567, at *4 (N.D. Ill. Dec. 16, 2005). Here, it seems likely that the Village, believing it was communicating with its lawyer in a privileged and confidential setting, would have disclosed confidential information to aid Murphey in providing useful advice about how they should proceed in the DOJ case. Furthermore, as Connolly has previously told this Court and does not recant or rebut in the opposition to this motion, the DOJ case and the present case

7

are "essentially the same" with respect to the core issues. Doc. 16 at 4. Connolly described the two cases as dealing with the same amendment to the Village code, the impact and reaction to that amendment, and the issue of "whether the Village's subsequent actions with respect to the amendment were legitimate or discriminatory." *Id.* Therefore, the Court finds that the two representations are substantially related, and the burden shifts to Connolly to rebut the presumption that the Village shared relevant confidential information with Murphey. *LaSalle Nat. Bank*, 703 F.2d at 256.

      C.      Rebuttal of Shared Confidences

Connolly does not directly rebut the presumption of shared confidential information. At most she states that "the only 'advice' rendered by [Murphey] was to provide general insights pointing out that the Justice Department's normal handling of these cases is with the goal of a consent decree and wide-ranging relief." Doc. 30 at 8. Connolly asserts that there are "no suggestions that . . . [Murphey] was privy to any executive session discussions by the Village Board, or obtained any information that could be viewed as an 'insight' that an attorney would obtain from privileged communications with clients." *Id.* In Murphey's affidavit attached to Connolly's opposition, he states that they never discussed the merits of the DOJ case during the phone call and that they did not discuss Connolly.

Neither party states what level of evidence is necessary to rebut the presumption that Murphey received relevant confidential information during the phone call. However, the statements above are plainly not enough. It is unlikely that over the course of a twenty-minute conversation regarding one case, the Village would not have disclosed any of its thinking about potential liability, potential defenses it may raise, or other confidential facts that could influence their decision to settle. Murphey seems to assert that they had a phone call, and without

8

reviewing the pleadings, defenses, or any other facts, he simply advised the Village to settle the case quickly based on what he had read in the press alone. Beyond being a poor way to provide advice to a client (or even to an associate simply seeking "insights"), it begs the question of what they discussed for twenty minutes. Therefore, the Court finds that Connolly has not rebutted the presumption that Murphey received relevant confidential information during the phone call.

Attorney disqualification is a "drastic remedy which courts should hesitate to impose except when absolutely necessary." *Owen v. Wagerin*, 985 F.2d 312, 317 (7th Cir. 1993). However, disqualification in this case does not unduly delay the proceedings or prejudice Connolly's defense. To date, Connolly has not served her 26(a) disclosures on the Village, she has not answered the Complaint, and she has not presented any argument that disqualifying Murphey would present any particular burden on her at all. In fact, according to Murphey's affidavit, Connolly did not even choose him as her representative in the first place; IRMA appointed him to represent her as a pool attorney. Connolly, of course, consented to his appointment and likely has been happy with the representation Murphey has provided her to date; however, there is no affidavit or argument that she would suffer any undue prejudice from his disqualification at this early stage. Therefore, the Court finds that disqualification is the appropriate remedy in this case.

### II. Waiver

Connolly argues that even if the standard for disqualification is met, the Village waived its right to challenge Murphey's participation in this case because it waited an excessive amount of time to bring its motion to disqualify him. A party waives its right to disqualify opposing counsel if it does not raise the issue promptly. *See Kafka v. Truck Ins. Exch.*, 19 F.3d 383, 386 (7th Cir. 1994) ("A motion to disqualify should be made with reasonable promptness after a

party discovers the facts which lead to the motion."). Murphey filed his appearance in this case on June 13, 2017 and the Village filed the motion to disqualify on October 20, 2017. The Village asserts that its attorneys did not become aware of Murphey's prior representation of the Village until mid-September 2017, and contacted Murphey regarding this within two weeks. After requesting that Murphey voluntarily withdraw from the case, the Village filed the present motion.

Murphey points to two cases where courts have denied motions to disqualify for unreasonable delay in filing the motions. In both, the delay was much more severe than the approximately four months in this case. In *Int'l Ins. Co. v. City of Chicago Heights*, 643 N.E.2d 1305, 1314, 268 Ill. App. 3d 289, 205 Ill. Dec. 698 (1994), the court found that the movant waived its right to bring a motion to disqualify by waiting more that sixteen months to raise the issue. In *In re Estate of Klehm*, 842 N.E.2d 1177, 1181, 363 Ill. App. 3d 373, 299 Ill. Dec. 825 (2006), the party waited four years before moving to disqualify. These cases are far more extreme than the present case, where, at most, the Village waited four months to file the motion. Furthermore, the delay has not in any way prejudiced Connolly's case because the parties have not filed their initial disclosures, engaged in any substantial discovery, and Connolly has not even filed an answer. Therefore, the Court finds the Village did not waive its right to move for disqualification.

## CONCLUSION

For the foregoing reasons the Court grants the motion to disqualify [27] John Murphey as counsel for Amy Connolly. Connolly is granted 14 days to obtain new counsel, at which time the Court will set a date for her to answer the complaint.

Dated: February 15, 2018

_____
SARA L. ELLIS
United States District Judge